ACCEPTED
03-12-00255-CV
3797186
THIRD COURT OF APPEALS
AUSTIN, TEXAS
1/16/2015 12:07:35 PM
JEFFREY D. KYLE
CLERK

Appeal No. 03-12-00255-CV

# In the Court of Appeals for the Third Judicial District • Austin, Texas

FILED IN
3rd COURT OF APPEALS
AUSTIN, TEXAS
1/16/2015 12:07:35 PM
JEFFREY D. KYLE
Clerk

**King Street Patriots,** Catherine Engelbrecht, Bryan Engelbrecht, and Diane Josephs,

*Appellants*

*v.*

**Texas Democratic Party;** Boyd Richie, in his capacity as Texas Democratic Party chairman; and John Warren, in his capacity as Democratic nominee for Dallas County clerk,

*Appellees*

## Appellants' Motion for *En-Banc* Reconsideration

Appeal from the District Court of Travis County, Texas, 261st Judicial District
Cause No. D-1-GN-11-002363 (John Deitz, P.J.)

Michael S. Hull
Texas Bar No. 10253400
HULL HENRICKS LLP
221 West 6th Street, Suite 960
Austin, Texas 78701
Telephone (512) 472-4554
Facsimile  (512) 494-0022

James Bopp, Jr., Ind. No. 2838-84
Randy Elf, New York No. 2863553
THE BOPP LAW FIRM, P.C.
1 South 6th Street
Terre Haute, Ind.  47807
Telephone (812) 232-2434
Facsimile  (812) 235-3685
jboppjr@aol.com

January 16, 2015

Additional Counsel Listed On
Following Page

Brock C. Akers
Texas Bar No. 00953250
THE AKERS FIRM
3401 Allen Parkway, Suite 101
Houston, Texas 77019
Telephone: (713) 877-2500
Facsimile: 1(713) 583-8662

Margaret A. Wilson
Texas Bar No. 21704400
807 Brazos Street, Suite 1014
Austin, Texas 78701
Telephone: (512) 970-9572
Facsimile: (512) 474-2540

Kelly J. Shackelford
Texas Bar No. 18070950
Jeffrey C. Mateer
Texas Bar No. 13185320
Hiram S. Sasser, III
Texas Bar No. 24039157
Justin E. Butterfield
Texas Bar No. 24062642
LIBERTY INSTITUTE
2001 West Plano Parkway,
Suite 1600
Plano, Texas 75075
Telephone: (972) 941-4444
Facsimile: (972) 941-4457

Jonathan M. Saenz
Texas Bar No. 24041845
LIBERTY INSTITUTE
900 Congress, Suite 220
Austin, Texas 78701
Telephone: (512) 478-2220
Facsimile: (512) 478-2229

2

## Identity of Counsel and Parties

**Appellants:** King Street Patriots, Catherine Engelbrecht, Bryan Engelbrecht and Diane Josephs

**Attorneys for Appellants:**

Michael S. Hull
Texas Bar No. 10253400
HULL HENRICKS LLP
221 West 6th Street, Suite 960
Austin, Texas 78701
Telephone: (512) 472-4554
Facsimile: (512) 494-0022

James Bopp, Jr.
Ind. Bar No. 2838-84
Randy Elf
New York Bar No. 2863553
THE BOPP LAW FIRM, P.C.
1 South 6th Street
Terre Haute, Indiana 47807
Telephone: (812) 232-2434
Facsimile: (812) 235-3685

Brock C. Akers
Texas Bar No. 00953250
THE AKERS FIRM
3401 Allen Parkway, Suite 101
Houston, Texas 77019
Telephone: (713) 877-2500
Facsimile: 1(713) 583-8662

Margaret A. Wilson
Texas Bar No. 21704400
807 Brazos Street, Suite 1014
Austin, Texas 78701
Telephone: (512) 970-9572
Facsimile: (512) 474-2540

Kelly J. Shackelford
Texas Bar No. 18070950
Jeffrey C. Mateer
Texas Bar No. 13185320
Hiram S. Sasser, III
Texas Bar No. 24039157
Justin E. Butterfield
Texas Bar No. 24062642
LIBERTY INSTITUTE
2001 West Plano Parkway,
Suite 1600
Plano, Texas 75075
Telephone: (972) 941-4444
Facsimile: (972) 941-4457

Jonathan M. Saenz
Texas Bar No. 24041845
LIBERTY INSTITUTE
900 Congress, Suite 220
Austin, Texas 78701
Telephone: (512) 478-2220
Facsimile: (512) 478-2229

**Appellees**: Texas Democratic Party, Boyd L. Richie, in his Capacity as Chairman of The Texas Democratic Party and John Warren, in his Capacity as Democratic Nominee for Dallas County Clerk 55th Judicial District

**Attorneys for Appellees:**

Dicky Grigg
State Bar No. 08487500
SPIVEY & GRIGG, LLP
48 East Avenue
Austin, Texas 78701
Telephone: (512) 474-6061
Facsimile: (512) 474-1605

Chadd W. Dunn, General Counsel
State Bar No. 24036507
K. Scott Brazil
State Bar No. 02934050
BRAZIL & DUNN
4201 FM 1960 West, Suite 530
Houston, Texas 77068
Telephone: (281) 580-6310
Facsimile: (281) 580-6362

# Table of Contents

Identity of Counsel and Parties ...................................................... 3

Table of Contents ...................................................... 5

Index of Authorities ...................................................... 7

Motion ...................................................... 11

I.   The panel applies the wrong tests for a facial challenge ................................. 11

II.  The panel wrongly presumes the challenged law is constitutional ................ 17

III. Argument ...................................................... 18

     A.   The provisions creating a private right of action for enforcement of the Texas Election Code are unconstitutional ........................................... 18

     B.   The Texas ban on contributions is unconstitutional ............................ 20

     C.   The Texas campaign-contribution and political-contribution definitions are unconstitutional ...................................................... 24

     D.   The Texas political-committee, specific-purpose committee, and general-purpose-committee definitions are unconstitutional. ............. 25

IV.  Prayer ...................................................... 29

Certificate of Compliance ...................................................... 30

Certificate of Service ........................................................... 31

Addendum ........................................................... 32

Second Memorandum Opinion by the Panel (Dec. 8, 2014) ..................................... 33

Accompanying Judgment (Dec. 8, 2014) ........................................................... 63

# Index of Authorities

**Cases**

*44 Liquormart, Inc. v. Rhode Island,* 517 U.S. 484 (1996).........................23

*Austin v. Michigan Chamber of Commerce,* 494 U.S. 652 (1990) ..............21

*Blum v. Yaretsky,* 457 U.S. 991 (1988) ...........................................20

*Brooks v. Northglen Ass'n,* 141 S.W.3d 158 (Tex. 2004)..........................17

*Buckley v. Valeo,* 424 U.S. 1 (1976)...................................... 18, 23, 25, 26, 27

*Buckley v. Valeo,* 519 F.3d 821 (D.C. Cir.1975) *(en-banc)*.......................27

*California Med. Ass'n v. FEC,* 453 U.S. 182 (1981)................................23

*California Pro-Life Council v. Getman,* 328 F.3d 1088 (9th Cir.2003) *("CPLC-I")* ... 27

*California Teachers Ass'n v. State Bd. of Educ.,* 271 F.3d 1141 (9th Cir.2001)........ 12

*Catholic Leadership Coalition of Texas v. Reisman,* 764 F.3d 409 (5th Cir.2014)... 13, 14

*Center for Individual Freedom v. Carmouche,* 449 F.3d 655 (5th Cir.2006).............29

*Citizens United v. FEC,* 558 U.S. 310 (2010)......................................17, 21

*City of Houston v. Hill,* 482 U.S. 451 (1987).....................................12

*Cohen v. California,* 403 U.S. 15 (1971)..........................................23

*Cook v. Tom Brown Ministries,* 385 S.W.3d 592 (Texas-App.-El Paso 2012)...........24

*Doe v. City of Albuquerque,* 667 F.3d 1111 (10th Cir.2012)........................17

*Dombrowski v. Pfister,* 380 U.S. 479 (1965) .....................................19

*Ex parte Lo,* 424 S.W.3d 10 (Tex.Crim.App.2013)..................................16

*FCC v. League of Women Voters of Cal.,* 468 U.S. 364 (1984)......................17

7

*FEC v. Beaumont*, 539 U.S. 146 (2003) ..................... 21, 22, 23, 24

*FEC v. Florida for Kennedy Comm.*, 681 F.2d 1281 (11th Cir.1982) ......................... 26

*FEC v. Massachusetts Citizens for Life, Inc.*, 479 U.S. 238 (1986) (*"MCFL"*) ........... 26

*FEC v. Wisconsin Right to Life, Inc.*, 551 U.S. 449 (2007) (*"WRTL-II"*) .. 22, 23, 25, 28

*Fort Wayne Books, Inc. v. Indiana*, 489 U.S. 46 (1989) ............................. 18

*Griffin v. Secretary of Veterans Affairs*, 288 F.3d 1309 (Fed.Cir.2002) ..................... 12

*Hurley v. Irish-American Gay, Lesbian and Bisexual Group of Boston, Inc.*, 515 U.S.

    557 (1995) ........................................................................ 23

*Iowa Right to Life Comm., Inc. v. Tooker*, 717 F.3d 576 (8th Cir.2013) (*"IRLC-II"*). 28

*Jordan v. Pugh*, 425 F.3d 820 (10th Cir.2005) ......................................... 12

*Justice v. Hosemann*, 771 F.3d 285 (5th Cir.2014) .................................. 13

*Kolender v. Lawson*, 461 U.S. 352 (1983) ........................................ 12

*McConnell v. FEC*, 540 U.S. 93 (2003) .................................................. 29

*McCutcheon v. FEC*, 134 S.Ct. 1434 (2014) ...................................... 22, 24

*Minnesota Citizens Concerned for Life, Inc. v. Swanson*, 692 F.3d 864 (8th Cir.2012)

    (*"MCCL-III"*) (*en-banc*) ........................................................ 26

*NAACP v. Alabama*, 357 U.S. 449 (1958) ............................................ 18

*New Mexico Youth Organized v. Herrera*, 611 F.3d 669 (10th Cir.2010) (*"NMYO"*). 26

*North Carolina Right to Life, Inc. v. Leake*, 525 F.3d 274 (4th Cir.2008) (*"NCRL-III"*)

    ............................................................................ 27, 28, 29

*Osterberg v. Peca*, 12 S.W.3d 31 (Tex. 2000) ........................................ 19

*Perry v. Schwarzenegger*, 591 F.3d 1147 (9th Cir.2010) .............................. 18

8

*Republican Party of N.M. v. King*, 741 F.3d 1089 (10th Cir.2013) ("*RPNM*")........... 24

*Seattle Title Trust Co. v. Roberge*, 278 U.S. 116 (1928) ............................................. 20

*Shami v. C.I.R.*, 741 F.3d 560 (5th Cir.2014) ......................................................... 14

*Skinner v. Railway Labor Execs. Ass'n*, 489 U.S. 602 (1989) ................................... 20

*State v. Johnson*, 425 S.W.3d 542 (Tex.App.-Tyler 2014) ......................................... 16

*United States v. Salerno*, 481 U.S. 739 (1987)........................................................ 11

*United States v. Stevens*, 559 U.S. 460 (2010) .............................................. 12, 14, 16

*United States v. Torres*, 767 F.3d 426 (5th Cir.2014)............................................... 14

*United States v. Williams*, 553 U.S. 285 (2008)....................................................... 13

*Unity08 v. FEC*, 596 F.3d 867 (D.C. Cir.2010) ....................................................... 26

*Voting for Am., Inc. v. Steen*, 732 F.3d 382 (5th Cir.2013).............................. 13, 14, 16

*Washington v. Glucksberg*, 521 U.S. 702 (1997)...................................................... 12

*Wilson v. State Bar of Ga.*, 132 F.3d 1422 (11th Cir.1998) ....................................... 12

*Wisconsin Right to Life, Inc. v. Barland*, 751 F.3d 804 (7th Cir.2014) ("*Barland-II*")

.......................................................................................................... 12, 24, 26

**Statutes**

TEX. ELEC. CODE 251.001 ...................................................... 24, 25, 26, 27, 28

TEX. ELEC. CODE 253.081 ............................................................... 18, 19, 20

TEX. ELEC. CODE 253.091 ........................................................................... 20

TEX. ELEC. CODE 253.094 ........................................................................... 20

TEX. ELEC. CODE 253.131 ............................................................................ 18, 19

TEX. ELEC. CODE 253.132............................................................... 18, 19, 20

**Other Authorities**

Robert Bauer, *Breaking Bad in Albuquerque? Or: the Question of Corporate Contributions After Citizens United,* More Soft Money Hard Law, Sept. 12, 2013 ... 21

**Rules**

TEX.R.APP.P. 9.4 ................................................................................................ 30

## Motion

This is a facial challenge to the constitutionality of Texas Election Code provisions. SECOND MEM. OP. at 1.

Counter-Defendants and Appellees Texas Democratic Party; Boyd Richie, in his capacity as Texas Democratic Party chairman; and John Warren, in his capacity as Democratic nominee for Dallas County clerk brought suit against Counter-Plaintiffs and Appellants King Street Patriots, Inc. ("KSP"), Catherine Engelbrecht, Bryan Engelbrecht, and Diane Josephs alleging Texas Election Code violations. *Id.* at 2-3.

The trial court rejected Appellants' facial challenge. *Id.* at 5-6. A panel of this Court affirmed on October 8, 2014. FIRST MEM. OP. at 6-30. On Appellants' previous motion for rehearing and *en-banc* reconsideration, SECOND MEM. OP. at 1, the panel revised its opinion and again affirmed on December 8, 2014. *Id.* at 6-30.

Pursuant to Texas Rule of Appellate Procedure 49, Appellants move for reconsideration *en-banc* − *not* panel rehearing − of the December 8, 2014, opinion and judgment (copies attached).

I.    **The panel applies the wrong tests for a facial challenge.**

*United States v. Stevens,* which the panel parenthetically cites, *id.* at 9, holds:

To succeed in *a typical facial attack,* [challengers] would have to establish "that no set of circumstances exists under which [the law] would be valid," *United States v. Salerno,* 481 U.S. 739, 745 (1987), or

11

that the [law] lacks any "plainly legitimate sweep," *Washington v. Glucksberg,* 521 U.S. 702, 740n.7 (1997) (Stevens, J., concurring).

559 U.S. 460, 472 (2010) (emphasis added), *quoted in Voting for Am., Inc. v. Steen,* 732 F.3d 382, 387 (5th Cir.2013); *see* SECOND MEM. OP. at 8 (quoting a *Salerno*-like standard (citations omitted)).

However, "neither *Salerno* nor *Glucksberg* is a speech case." *Stevens,* 559 U.S. at 472. In facial-vagueness[1] and facial-overbreadth challenges to *speech* law, the test is relaxed: A court asks *only* whether the law "reaches a substantial amount of constitutionally protected conduct." *City of Houston v. Hill,* 482 U.S. 451, 458 (1987) (citations omitted); *see also Kolender v. Lawson,* 461 U.S. 352, 358n.8 (1983) (quoting *Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.,* 455 U.S. 489, 494 (1982)).

In other words, the test for facial constitutionality of speech law derives from *Broadrick v. Oklahoma* and asks *only* whether "a substantial number of [the law's] applications are unconstitutional, judged in relation to the [law's] plainly legitimate sweep." *Stevens,* 559 U.S. at 473 (quoting *Washington State Grange v. Washington State Republican Party,* 552 U.S. 442, 449n.6 (2008)); *see also United States v.*

---

[1] *E.g., Wisconsin Right to Life, Inc. v. Barland,* 751 F.3d 804, 835-36 (7th Cir.2014) ("*Barland-II*"); *Jordan v. Pugh,* 425 F.3d 820, 828 (10th Cir.2005); *Griffin v. Secretary of Veterans Affairs,* 288 F.3d 1309, 1330 (Fed.Cir.2002); *California Teachers Ass'n v. State Bd. of Educ.,* 271 F.3d 1141, 1152 (9th Cir.2001); *Wilson v. State Bar of Ga.,* 132 F.3d 1422, 1429 (11th Cir.1998).

*Williams,* 553 U.S. 285, 292-93 (2008) (citing *Board of Trs. of State Univ. of N.Y. v. Fox,* 492 U.S. 469, 485 (1989); *Broadrick v. Oklahoma,* 413 U.S. 601, 615 (1973)).

This is Fifth Circuit law. *Voting for America,* 732 F.3d at 387 (quoting *Stevens,* 559 U.S. at [473]). Nevertheless, a later Fifth Circuit panel opinion on Texas election law which the panel in this appeal cites, SECOND MEM. OP. at 2n.1, 9, 14, 26 – and an even later Fifth Circuit panel opinion on Mississippi election law – state that the test for facial constitutionality of speech law is *in part* whether "a substantial number of [the law's] applications are unconstitutional, judged in relation to the [law's] plainly legitimate sweep." *Catholic Leadership Coal. of Tex. v. Reisman,* 764 F.3d 409, 426 (5th Cir.2014) (second alteration added) (quoting *Stevens,* 559 U.S. at 473), *quoted in Justice v. Hosemann,* 771 F.3d 285, 296n.10 (5th Cir.2014) (*reh'g pet. pending*).

By *also* holding a *Salerno/Glucksberg*-like unconstitutional-in-all-its-applications or *any*-plainly-legitimate-sweep test can apply in facial challenges to speech law, *Catholic Leadership*[2] and *Justice*[3] conflict[4] with *Voting for America,*

---

[2] 764 F.3d at 426.

[3] 771 F.3d at 296.

[4] *Catholic Leadership* holds that

> Plaintiffs have two ways to prevail in their facial challenges to [law] because this is a First Amendment case. *First, Plaintiffs can "establish that no set of circumstances exists under which [the law] would be valid or that the [law] lacks any plainly legitimate sweep." United States v. Stevens,* 559 U.S. 460, 472 (2010) (internal quotation marks and citation omitted). Second, Plaintiffs may also invalidate [law] as

13

which holds that – under *Stevens,* 559 U.S. at 473 – the "standard for facial challenges" to speech law "is different" from *Salerno* (and, by extension, *Glucksberg*). 732 F.3d at 387.

Being the *earlier* panel opinion, *Voting for America* – not *Catholic Leadership* or *Justice* – controls. *See Shami v. C.I.R.,* 741 F.3d 560, 569 (5th Cir.2014) ("When panel opinions ... conflict, we ... follow the earlier opinion" (quoting *H&D Tire & Automotive-Hardware, Inc. v. Pitney Bowes Inc.,* 227 F.3d 326, 330 (5th Cir.2000))).

This is because one Fifth Circuit panel cannot overrule another. *United States v. Torres,* 767 F.3d 426, 430 (5th Cir.2014) ("we must follow [the earlier panel opinion] until the Supreme Court, this court sitting *en[-]banc,* or [the legislature] says otherwise" (citing *Jacobs v. Nat'l Drug Intelligence Ctr.,* 548 F.3d 375, 378 (5th

---

overbroad if they demonstrate that "a substantial number of [the law's] applications are unconstitutional, judged in relation to the [law's] plainly legitimate sweep." *Id.* at 473 (internal citations omitted).

764 F.3d at 426 (emphasis added; some alterations added), *quoted in Justice,* 771 F.3d at 296&n.10.

But this is unnecessarily complicated: Because Test (1) presents a higher hurdle for challengers to clear, those prevailing on Test (1) necessarily prevail on Test (2). *See id.* Being an alternative to Test (2), Test (1) is unnecessary.

More fundamentally, *Stevens* does *not* describe "two ways" to "prevail" in "facial challenges" to speech law. *Id.* Instead, *Stevens first* describes the "typical facial attack[,]" *supra* 11-12 (quoting 559 U.S. at 472), and *then* describes the test for facial challenges to *speech* law. *Supra* 12 (quoting 559 U.S. at 473). *Only the latter analysis, not the former, applies to speech law. See Stevens,* at 472-73. This is because under *Stevens, id.* at 473, the "standard for facial challenges" to speech law "is different" from *Salerno* (and, by extension, *Glucksberg*). *Voting for America,* 732 F.3d at 387.

14

Cir.2008) ("one panel ... may not overturn another ... absent an intervening change in the law"))).

Nevertheless, the first opinion in this appeal applied a *Salerno*-like unconstitutional-in-all-its-applications test. *See* FIRST MEM. OP. at 1, 9, 11, 14, 26-27, 28. When Appellants previously sought rehearing or *en-banc* reconsideration, the panel changed the standard, *yet not correctly*.

The revised opinion quotes *Catholic Leadership* and conflicts with *Voting for America* multiple times:

●Initially the panel says the alternative tests for facial constitutionality of speech law are whether (1)(a) the law "lacks *any* plainly legitimate sweep" or (2) "a substantial number of [the law's] applications are unconstitutional, judged in relation to the [law's] plainly legitimate sweep." SECOND MEM. OP. at 9 (emphasis added; second alteration added).

●Later, in applying its tests, the panel – without mentioning Test (2) – asks whether law (1)(a) "lacks *any* plainly legitimate sweep" or (1)(b) "is unconstitutional in all circumstances[.]" *Id.* at 14 (emphasis added).

•Still later, in applying its tests, the panel – without mentioning Test (2) – applies only Test (1)(a). *See id.* at 26.

However, Test (2) is the *only* correct option.[5] Tests (1)(a) and (1)(b) are for "the typical facial attack" under *Stevens,* 559 U.S. at 472. Neither Test (1)(a) nor Test (1)(b) applies to *speech* law.[6] In applying *only* Test (2),[7] this Court need not hold that *Catholic Leadership* or *Justice* errs.[8] Rather, this Court need only acknowledge that one Fifth Circuit panel cannot overrule another.[9]

Like *Voting for America,* 732 F.3d at 387, recent Texas appellate courts continue to recognize the *Broadrick*-based test[10] in both civil and criminal appeals regarding speech law. *See State v. Johnson,* 425 S.W.3d 542, 546, 550-51 (Tex.App.-Tyler 2014), *pet. for discretionary review granted* (April 9, 2014); *Ex parte Lo,* 424 S.W.3d 10, 18 (Tex.Crim.App.2013).

Indeed, the panel in this appeal cites other Texas appellate courts applying the *Broadrick*-based test in challenges to speech law. *See* SECOND MEM. OP. at

---

[5] *Supra* 12-13.

[6] *Supra* 13-14&n.4.

[7] *Supra* 11-13.

[8] *Cf. supra* 13-14n.4.

[9] *Supra* 14-15.

[10] *Supra* 12-13.

24n.7 (quoting *Ex Parte Ellis,* 309 S.W.3d 71, 90-91 (Tex.Crim.App.2010) (citing/quoting, in turn, *Broadrick,* 413 U.S. at 615)); *Commission for Lawyer Discipline v. Benton,* 980 S.W.2d 425, 436 (Tex. 1998) (quoting *Houston,* 482 U.S. at 458)).

Thus, the panel applies the wrong tests. This error urgently needs correcting. Otherwise facial challenges to unconstitutional speech laws – not just in this appeal, but in other appeals as well – will fail when they should succeed.

## II. The panel wrongly presumes the challenged law is constitutional.

The panel "presum[es]" the challenged law is constitutional. *Id.* at 7 (quoting *Brooks v. Northglen Ass'n,* 141 S.W.3d 158, 170 (Tex. 2004)).

However, *Brooks* is not a *speech*-law challenge. *See* 141 S.W.3d at 160-61. In *speech*-law challenges, courts do not presume law is constitutional. *Doe v. City of Albuquerque,* 667 F.3d 1111, 1120 (10th Cir.2012) (citing *ACORN v. Municipality of Golden,* 744 F.2d 739, 746 (10th Cir.1984)). Deference to a legislature "cannot limit judicial inquiry" regarding First Amendment rights. Otherwise, they "would be subject to legislative definition"; "the First Amendment as a check on legislative power would be nullified." *FCC v. League of Women Voters of Cal.,* 468 U.S. 364, 387n.18 (1984) (citing *Landmark Communications, Inc. v. Virginia,* 435 U.S. 829, 843-44 (1978)). *Citizens United v. FEC,* for example, does not presume speech law is constitutional, and it does not defer to a legislature. *See* 558 U.S. 310, 336-66 (2010). "When [a legislature] finds that a problem exists, [courts] must give that

17

finding due deference; but [a legislature] may not choose an unconstitutional remedy." *Id.* at 361.

## III. Argument

Appellants do *not* seek *en-banc* reconsideration on *all* their arguments. Applying the correct facial-constitutionality test and declining to presume law is constitutional, Appellants prevail.

### A. The provisions creating a private right of action for enforcement of the Texas Election Code are unconstitutional.

Applying the wrong tests for facial constitutionality, *see* SECOND MEM. OP. at 14, the panel rejects Appellants' facial-overbreadth and facial-vagueness challenges to Texas's private-right-of-action provisions. *Id.* at 14-17; TEX. ELEC. CODE 253.131, 253.132, 273.081.

Applying the right test, the private-right-of-action provisions are facially unconstitutional, because they fail the *Broadrick*-based test.

Discovery can chill speech. *See Buckley v. Valeo,* 424 U.S. 1, 68 (1976). Texas's private-right-of-action provisions lack standards regarding what showing is necessary to initiate discovery and what is discoverable. But the First Amendment requires both. *See Fort Wayne Books, Inc. v. Indiana,* 489 U.S. 46, 62-64 (1989); *Perry v. Schwarzenegger,* 591 F.3d 1147, 1163-64 (9th Cir.), *cert. dismissed,* 559 U.S. 1118 (2010). If one can allege wrongdoing and then commence discovery to see whether one can prove the claim, then the protections of associational rights hardly have any meaning. *See NAACP v. Alabama,* 357 U.S. 449, 462 (1958) (recognizing

18

"the vital relationship between freedom to associate and privacy in one's associations"). Inadequate safeguards in enforcement proceedings threaten free speech. *See Dombrowski v. Pfister*, 380 U.S. 479, 486-87 (1965). Because Texas's private-right-of-action provisions do not delineate the showing necessary to seek discovery in an action, they violate the First Amendment.

Although *Osterberg v. Peca* rejects a First Amendment challenge to the private-right-of-action provisions, 12 S.W.3d 31, 49-50 (Tex.), *cert. denied*, 530 U.S. 1244 (2000), *Osterberg* considers only "*who* can seek and receive damages." *Id.* at 49 (emphasis in original). In addition, *Osterberg* considers that a political speaker will be subject to only one enforcement proceeding. *See id.* ("that the person enforcing the law and receiving damages can be a private party *rather than* the State" (emphasis added)). However, Texas law allows for an unlimited number of private parties to sue. *See* TEX. ELEC. CODE 253.131 ("each opposing candidate"), 253.132 ("each political committee"). Each candidate may sue a speaker who violates the law. TEX. ELEC. CODE. 253.131(b). If the speech at issue in this appeal were regarding one candidate, as in *Osterberg*, 12 S.W.3d at 35-36, there may be only one private cause of action. However, when many candidates are involved, many candidates may sue. Thus, *Osterberg* does not control here.[11]

Moreover, the lack of standards for discovery and initiating a suit, *see* TEX. ELEC. CODE 253.131, 253.132, 273.081, violates the Fourteenth Amendment's Due

---

[11] In addition, Texas can step in and seek a treble penalty. *See* TEX. ELEC. CODE 253.133.

19

Process Clause. While the panel recognizes that *Blum v. Yaretsky* holds the Due Process Clause "erects no shield against merely private conduct, however discriminatory or wrong[,]" SECOND MEM. OP. at 15 (quoting 457 U.S. 991, 1002 (1988)), *Blum* distinguishes "those cases in which the defendant is a private party and the question is whether his conduct has sufficiently received the imprimatur of the State so as to make it 'state' action for purposes of the Fourteenth Amendment." 457 U.S. at 1003. By undertaking a private right of action, private parties do what the state does, which leads to enforcement of the law. This is an imprimatur for state action. *See* TEX. ELEC. CODE 253.131, 253.132, 273.081. The panel holds that the Due Process Clause applies only when there is state action, *see* SECOND MEM. OP. at 15, and when law "delegate[s] legislative power to private citizens[,]" *id.* at 15n.4, but the Due Process Clause also applies when the state gives individuals other powers as well, including power to enforce existing law. *See Seattle Title Trust Co. v. Roberge,* 278 U.S. 116, 122 (1928).[12]

**B.      The Texas ban on corporate contributions is unconstitutional.**

The panel holds Texas law bans corporate and union contributions. TEX. ELEC. CODE 253.091, 253.094; SECOND MEM. OP. at 20.

---

[12] The panel holds that *Skinner v. Railway Labor Executives Association* forecloses Appellants' Fourth Amendment challenge. *See* SECOND MEM. OP. at 15-16 (citing 489 U.S. 602, 624 (1989) (holding that the Fourth Amendment does not apply to a private party acting on its own initiative)). Appellants seek no *en-banc* reconsideration on this point here.

Appellants similarly seek no *en-banc* reconsideration here on the holding that this law is not a prior restraint. *Id.* at 17-18.

The panel rejects Appellants' First Amendment challenge to the corporate-contribution ban, *id.,* by relying on *Ellis,* which relies on *FEC v. Beaumont,* 539 U.S. 146 (2003). SECOND MEM. OP. at 20.

Although *Beaumont* upholds a corporate-contribution ban, 539 U.S. at 152-63, while *Citizens United* rejects an independent-spending ban, 558 U.S. at 336-66, *Citizens United's* reasoning supersedes *Beaumont's.* As a distinguished election lawyer, leading Democrat, and former White House counsel to President Barack Obama notes:

> Reading *Beaumont* today, one is struck by a jurisprudence that measures up poorly to the tone and substance of *Citizens United.* ... [*Beaumont*] upheld a contributions ban with emphasis on the "special characteristics of the corporate structure." [539 U.S.] at 153, quoting *National Right to Work Committee v. [FEC],* 457 U.S. 197[,] 209 (1982). Ten times, [Justice] Souter cited *Austin v. Michigan Chamber of Commerce,* 494 U.S. 652 (1990), overruled by *Citizens United,* and in upholding legislative authority to impose a complete contributions ban, he specifically cites the anti-distortion rationale of *Austin* that the *Citizens United* majority has rejected. *Beaumont*[, 539 U.S.] at 158 (the corporations enjoying the "special benefits conferred by the corporate structure ... present the potential for distorting the political process.")[.] [Justice] Souter also relied heavily on *National Right to Work Committee,* which rested largely on a view of the particular dangers posed by corporations of any and all sizes to the political process. *Beaumont*[, 539 U.S.] at 156 ("*National Right to Work* all but decided the issue" before the Court).

Robert Bauer, *Breaking Bad in Albuquerque? Or: the Question of Corporate Contributions After Citizens United,* More Soft Money Hard Law, Sept. 12, 2013, *available at* http://www.moresoftmoneyhardlaw.com/2013/09/breaking-bad-in-albuquerque-or-the-question-of-corporate-contributions-after-citizens-united (discussing *Giant Cab Co. v. Bailey,* No. 13-cv-426, MEM. OP. at 8 (D.N.M. Sept. 4,

21

2013), *available at* http://www.nmcourt.fed.us/Drs-Web/view-file?unique-identifier=0005525024-0000000000).

To address these points in even more detail: *Post-Beaumont* Supreme Court opinions undercut *Beaumont* in at least seven ways.

First, the antidistortion rationale and interest on which *Beaumont* relies, *see* 539 U.S. at 154, 158, 160, is invalid after *Citizens United,* 558 U.S. at 349-56.

Second, *Beaumont* looks beyond preventing *quid-pro-quo* corruption (or its appearance) to preventing "undue influence" (or its "appearance"), 539 U.S. at 156 (citation omitted), but after *Citizens United,* the only cognizable interest in banning or otherwise limiting speech, including contributions, is preventing *quid-pro-quo* corruption (or its appearance). *McCutcheon v. FEC,* 572 U.S.___, 134 S.Ct. 1434, 1441 (2014) (quoting *Citizens United,* 558 U.S. at 359).

Third, *Beaumont* looks to the dissenting-shareholder-protection rationale, 539 U.S. at 154, which is invalid after *Citizens United,* 558 U.S. at 361-62.

Fourth, *Beaumont's* assertion that First Amendment burdens of a corporate-contribution ban are diminished because "individual members of corporations" are "free to make their own contributions," 539 U.S. at 161n.8, is inconsistent with *FEC v. Wisconsin Right to Life, Inc.,* which holds that alternatives do not fix First Amendment problems. Suggesting alternatives is like telling Cohen to wear another jacket. *See* 551 U.S. 449, 477n.9 (2007) (*"WRTL-II"*) (citing *Cohen v.*

22

*California*, 403 U.S. 15 (1971)[13]). And banning joint activity because individual activity is available vitiates the right of "like-minded persons to pool their resources in furtherance of common political goals[,]" *Buckley*, 424 U.S. at 22, both in an incorporated association and with a chosen candidate or political committee.

Fifth, *Beaumont* suggests that "[t]he PAC option allows corporate political participation[.]" 539 U.S. at 163. *Citizens United* undercuts that by holding a political committee that a corporation *forms/has* is "separate" from the corporation. 558 U.S. at 337.[14] *Forming/having* a political committee "does not allow [a] corporation[] to speak." *Id.*

---

[13] *Cohen*, a Vietnam era decision, holds that Paul Robert Cohen had a First Amendment right to wear a jacket saying "____ the Draft" in a courthouse. 403 U.S. at 16-26. *WRTL-II* relies on *Cohen:*

> we disagree with the dissent's view that corporations can still speak by changing what they say to avoid mentioning candidates, *post*, at 2702-2703. That argument is akin to telling Cohen that he cannot wear his jacket because he is free to wear one that says "I disagree with the draft," *cf. Cohen v. California*, 403 U.S. 15 (1971), or telling 44 Liquormart that it can advertise so long as it avoids mentioning prices, *cf. 44 Liquormart, Inc. v. Rhode Island*, 517 U.S. 484 (1996). Such notions run afoul of "the fundamental rule of protection under the First Amendment, that a speaker has the autonomy to choose the content of his own message." *Hurley v. Irish-American Gay, Lesbian and Bisexual Group of Boston, Inc.*, 515 U.S. 557, 573 (1995).

551 U.S. at 477n.9.

[14] When an organization *forms/has* a political committee, and the political committee speaks, the speech is the speech of the political committee, not the organization, because such a political committee is "separate" from the organization. *Citizens United*, 558 U.S. at 337; *California Med. Ass'n v. FEC*, 453 U.S. 182, 196 (1981).

23

Sixth, as for preventing circumvention of valid contribution bans and other limits, *Beaumont*, 539 U.S. at 155 (citation omitted), "valid" is the key word, *id.*, because preventing "circumvention" cannot justify otherwise unconstitutional law. *McCutcheon*, 134 S.Ct. at 1452-60; *Republican Party of N.M. v. King*, 741 F.3d 1089, 1102 (10th Cir.2013) (*"RPNM"*) ("there can be no freestanding anti-circumvention interest").

Seventh, *Beaumont* expressly defers to a legislature. 539 U.S. at 157, 159, 162n.9. But under *Citizens United*, the First Amendment overrides deference: "When [a legislature] finds that a problem exists, we must give that finding due deference; but [a legislature] may not choose an unconstitutional remedy." 558 U.S. at 361.

## C. The Texas campaign-contribution and political-contribution definitions are unconstitutional.

"Campaign contribution" is defined as: "a contribution to a candidate or *political committee* that is offered or given with *the intent* that it be used in connection with a campaign for elective office or on a measure." TEX. ELEC. CODE 251.001(3) (emphasis added).

---

By contrast, when an organization itself must *be* a political committee or a political-committee-like organization to speak, the organization itself speaks and bears political-committee(-like) burdens. *Barland-II*, 751 F.3d at 812-16.

*Cook v. Tom Brown Ministries* conflates *forming/having* and *being* a political committee. *See* 385 S.W.3d 592, 601, 604 (Texas-App.-El Paso 2012) (holding that law banning an organization's speech and letting the organization "create its own political committee," which then speaks, does not ban the organization's speech), *review denied*, (Tex. Dec. 14, 2012).

24

This definition is circular, because the campaign-contribution definition depends on the political-committee definition, *id.*, which depends on the political-contribution definition, *id.* 251.001(12), which depends on the campaign-contribution definition. *Id.* 251.001(5).

Furthermore, the definition is intent based, contrary to *WRTL-II*, 551 U.S. at 466-69. An intent-based test affords "no security for free discussion" and "blankets with uncertainty whatever may be said." *Id.* at 467-68. "It compels the speaker to hedge and trim," and places the speaker "wholly at the mercy of the varied understanding of his hearers and consequently of whatever inference may be drawn as to his intent and meaning." *Buckley*, 424 U.S. at 43.

Section 251.001(5) then defines a "political contribution" as "a campaign contribution or an officeholder contribution." Since the campaign-contribution definition is vague, *see id.*, the political-contribution definition is also vague.[15]

### D. The Texas political-committee, specific-purpose committee, and general-purpose-committee definitions are facially unconstitutional.

Appellees contend that "based upon its political activities," KSP itself must *be* a "political committee."[16] SECOND MEM. OP. at 2.

---

[15] Appellants seek no *en-banc* reconsideration on other points regarding the contribution and expenditure definitions here. *See* SECOND MEM. OP. at 21-24.

[16] As opposed to having to *form/have* a political committee, and let only such a political committee speak. *Supra* 23-24n.14.

25

The proper challenge to law requiring an organization to *be* a political committee or a political-committee-like organization is to the political-committee, or the political-committee-like, definition.[17]

Applying the wrong test for facial constitutionality, *see id.* at 26, the panel rejects Appellants' facial-overbreadth and facial-vagueness challenges to Texas's political-committee, specific-purpose-committee, and general-purpose-committee definitions. *Id.* at 27-28; TEX. ELEC. CODE 251.001.

●Applying the right test, Appellants prevail.

Registration, recordkeeping, and extensive, ongoing reporting are "onerous" political-committee(-like) burdens. *Citizens United,* 558 U.S. at 337-40.[18]

To counter as-applied and facial overbreadth, *Barland-II,* 751 F.3d at 839; *see FEC v. Massachusetts Citizens for Life, Inc.,* 479 U.S. 238, 252n.6, 262 (1986) ("*MCFL*"), *Buckley* allows government to trigger political-committee(-like) burdens only for "organizations" that are (a) "under the control of a candidate" or candidates

---

[17] *See Buckley,* 424 U.S. at 79 (addressing how "'political committee' is defined" and holding what "the words 'political committee' … need only encompass" to be constitutional); *Barland-II,* 751 F.3d at 811, 812, 832-33, 834, 838, 839-40, 843-44; *Minnesota Citizens Concerned for Life, Inc. v. Swanson,* 692 F.3d 864, 872 (8th Cir.2012) ("*MCCL-III*") (*en-banc*); *New Mexico Youth Organized v. Herrera,* 611 F.3d 669, 676 (10th Cir.2010) ("*NMYO*") ("classified as political committees"); *Unity08 v. FEC,* 596 F.3d 861, 867 (D.C. Cir.2010) (quoting *FEC v. Machinists Non-Partisan Political League,* 655 F.2d 380, 392, 395-96 (D.C. Cir.), *cert. denied,* 454 U.S. 897 (1981)); *NCRL-III,* 525 F.3d at 288-89; *FEC v. Florida for Kennedy Comm.,* 681 F.2d 1281, 1287 (11th Cir.1982).

[18] The reporting on *Citizens United* pages 366-71 is *non*-political-committee, one-time/event-driven reporting. *Barland-II,* 751 F.3d at 824, 836-37, 839, 841; *MCCL-III,* 692 F.3d at 875n.9.

26

in their capacities as candidates, or (b) have "the major purpose" of "nominat[ing] or elect[ing] a candidate" or candidates. 424 U.S. at 79, *followed in MCFL,* 479 U.S. at 252n.6, 262.[19]

*Buckley* applies not only to federal law but also to state law. *E.g., North Carolina Right to Life, Inc. v. Leake,* 525 F.3d 274, 287-90 (4th Cir.2008) ("*NCRL-III*"). Because Texas's political-committee, specific-purpose-committee, and general-purpose-committee definitions, TEX. ELEC. CODE 251.001, trigger political-committee and political-committee-like burdens beyond when *Buckley* allows government to trigger them, the Texas definitions are facially unconstitutional. *See NCRL-III,* 525 F.3d at 287-90.

Rather than limiting such burdens to organizations with "the major purpose" under *Buckley,* Texas reaches organizations with "a principal purpose" of accepting contributions or making expenditures. SECOND MEM. OP. at 27. Yet "a principal purpose" – or even "the principal purpose" – are not the same as "the major purpose" under *Buckley, see NCRL-III,* 525 F.3d at 287-90, because "principal" means "first, highest, or foremost in importance, rank, worth, or degree; chief[,]"

---

[19] This goes to the tailoring part of constitutional scrutiny, not the government-interest part. *See Barland-II,* 751 F.3d at 841-42; *Buckley v. Valeo,* 519 F.3d 821, 869 (D.C. Cir.1975) (*en-banc*), *aff'd/rev'd on other grounds,* 424 U.S. 1 (1976).

In this appeal, it is unnecessary to consider whether ballot-measure speech allows government to trigger political-committee(-like) burdens, *cf. California Pro-Life Council v. Getman,* 328 F.3d 1088, 1101n.16 (9th Cir.2003) ("*CPLC-I*") (quoting *MCFL,* 479 U.S. at 252-53), because no ballot-measure speech is at issue.

SECOND MEM. OP. at 27 (brackets omitted), while "major" in "the major-purpose test" means "majority."[20] What is "principal" is not necessarily the majority. *See id.*

•As to vagueness: The panel's definition of "principal" in effect turns "a principal" in the statute, *id.*, into "the principal" and removes vagueness from "a principal." *See id.* It also in effect means that organizations without "the principal" purpose – as effectively defined – of accepting contributions or making expenditures need not comply with political-committee or political-committee-like burdens under Texas law. *See id.*

While this removes facial vagueness from "a principal" in the law, *see id.*, it does not resolve the facial-*overbreadth* of the law. *See NCRL-III*, 525 F.3d at 287-90.[21]

Nor does it remove other vagueness. The general-purpose-political-committee definition is vague because it refers to "supporting or opposing" candidates or measures. TEX. ELEC. CODE 251.001(14); *see WRTL-II*, 551 U.S. at

---

[20] *See Iowa Right to Life Comm., Inc. v. Tooker*, 717 F.3d 576, 584 (8th Cir.2013) ("*IRLC-II*") (quoting *Colorado Right to Life Comm., Inc. v. Coffman*, 498 F.3d 1137, 1152 (10th Cir.2007) ("*CRLC*") (citing/quoting, in turn, *MCFL*, 479 U.S. at 252n.6, 262), *followed in NMYO*, 611 F.3d at 678), *cert. denied*, 572 U.S.___, 134 S.Ct. 1787 (2014).

[21] The panel holds the 30- and 60-day blackout periods are not at issue here. SECOND MEM. OP. at 28-29. Appellants seek no *en-banc* reconsideration on this point here.

Addressing Appellants' Eighth Amendment challenge, the panel holds Appellees are not entitled to seek criminal penalties. *Id.* at 30. Appellants seek no *en-banc* reconsideration on this point here.

493 (Scalia, J., concurring) (calling the appeal-to-vote test vague and saying it "seem[s] tighter" than, *inter alia,* promote-support-attack-oppose in federal law); *Center for Individual Freedom v. Carmouche,* 449 F.3d 655, 663-66 (5th Cir.2006) (upholding "for the purpose of supporting, opposing, or otherwise influencing the nomination or election of a person to public office" after holding it reaches only *Buckley* express advocacy), *cert. denied,* 549 U.S. 1112 (2007); *NCRL-III,* 525 F.3d at 289, 301 (approving "support or oppose" when – after *id.* at 281-86 – its reaches only *Buckley* express advocacy); *but see McConnell v. FEC,* 540 U.S. 93, 170n.64 (2003) (rejecting a *pre-Carmouche* facial-challenge to promote-support-attack-oppose in federal law), *overruled on other grounds, Citizens United,* 558 U.S. at 336-66.

## IV.    Prayer

The court should grant *en-banc* reconsideration.

Respectfully submitted,

THE AKERS FIRM
3401 Allen Parkway, Suite 101
Houston, Texas 77019
Telephone (713) 877-2500
Facsimile 1(713) 583-8662

By:    /s/ Brock C. Akers
        Brock C. Akers
        Texas State Bar No. 00953250

*Attorneys for*
*Counter-Plaintiffs and Appellants*

## Certificate of Compliance

I certify that this filing has 4500 words not counting the parts exempt from the word count. *Cf.* TEX.R.APP.P. 9.4(i)(2)(D), 9.4(i)(3).

/s/ Randy Elf
Randy Elf

January 16, 2015

## Certificate of Service

I hereby certify that a true copy of the foregoing document has been served upon all counsel of record and to court personnel *via* electronic filing and/or first-class mail on this 16th day of January 2015.

Chad W. Dunn
General Counsel
4201 FM 1960 West, Suite 530
Houston, Texas 77068
Email: chad@brazilanddunn.com

K. Scott Brazil
4201 FM 1960 West, Suite 530
Houston, Texas 77068
Email: scott@brazilanddmm.com

Dicky Grigg
Spivey & Grigg, LLP
48 East A venue
Austin, Texas 78701
Email: dicky@grigg-law.com

Jeffrey D. Kyle, Clerk
Third Court of Appeals
209 West 14111 Street, Room 101
Austin, Texas 78701

/s/ Brock C. Akers
Brock C. Akers

31

# Addendum

# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## ON MOTION FOR REHEARING

## NO. 03-12-00255-CV

**King Street Patriots, Catherine Engelbrecht, Bryan Engelbrecht and Diane Josephs,
Appellants**

**v.**

**Texas Democratic Party; Gilberto Hinojosa, Successor to Boyd Richie, in His Capacity as
Chairman of the Texas Democratic Party; John Warren, in His Capacity as Democratic
Nominee for Dallas County Clerk; and Ann Bennett, in her Capacity as the Democratic
Nominee for Harris County Clerk, 55th Judicial District, Appellees**

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 261ST JUDICIAL DISTRICT
### NO. D-1-GN-11-002363, HONORABLE JOHN K. DIETZ, JUDGE PRESIDING

## O P I N I O N

We withdraw our opinion issued on October 8, 2014, and substitute this one in its place. We overrule appellants' motion for rehearing.

This appeal is limited to facial challenges to the constitutionality of various Election Code provisions. *See* Tex. Elec. Code §§ 251.001, 253.003, 253.031, 253.037, 253.091, 253.094, 253.095, 253.101, 253.102, 253.103, 253.104, 253.131, 253.132, 273.081; Act of June 19, 1987, 70th Leg., R.S., ch. 899, § 1, 1987 Tex. Gen. Laws 2995, 3009 (former sections 253.062 and 253.097, repealed 2011). Facing cross-motions for summary judgment, the trial court ruled against appellants King Street Patriots (KSP), Catherine Engelbrecht, Bryan Engelbrecht, and Diane Josephs,

33

the parties facially challenging the constitutionality of the Election Code provisions. The trial court concluded that it did not have jurisdiction to consider some of appellants' constitutional challenges and, as to the remaining challenges, the trial court upheld the constitutionality of the Election Code provisions at issue. For the reasons that follow, we affirm the trial court's judgment.[1]

## BACKGROUND

The Texas Democratic Party, Boyd Richie,[2] in his capacity as Chairman of the Texas Democratic Party, John Warren, in his capacity as Democratic nominee for Dallas County Clerk, and Ann Bennett, in her capacity as the Democratic nominee for Harris County Clerk, 55th Judicial District (collectively "TDP"), brought suit against appellants seeking damages and injunctive relief based upon alleged Election Code violations. *See* Tex. Elec. Code §§ 253.131, 253.132, 273.081. Their allegations included that KSP made unlawful political contributions to the Texas Republican Party and its candidates (collectively "TRP") with regard to the 2010 general election by training poll watchers in coordination with the TRP and then offering the poll watchers' services only to the TRP. TDP also alleged that, based upon its political activities, KSP was "a sham domestic nonprofit corporation" and "an unregistered and illegal political committee." TDP asserted claims against KSP

---

[1] To the extent appellants assert as-applied constitutional challenges in the severed suit, we express no opinion as to the merits of those challenges. *See Combs v. STP Nuclear Operating Co.,* 239 S.W.3d 264, 272 (Tex. App.—Austin 2007, pet. denied) (noting that "party making an as-applied challenge need only show that the statute is unconstitutional because of the manner in which it was applied in a particular case" and that as-applied challenge is "fact specific"); *see also Catholic Leadership Coal. of Tex. v. Reisman,* 764 F.3d 409, 426 (5th Cir. 2014) (noting that facial and as-applied challenges "have different substantive requirements" and comparing as-applied and facial constitutional challenges in context of challenges to Texas Election Code).

[2] Gilberto Hinojosa replaced Boyd Richie as the Chairman of the Texas Democratic Party following Hinojosa's election at the Texas Democratic Party State Convention.

for Election Code violations based upon KSP's status as a political committee and its status as a corporation.

Appellants answered and filed a counterclaim. They asserted that KSP was formed as a non-profit Texas corporation on December 30, 2009, to "provide education and awareness" to the "general public on important civic and patriotic duties." They stated that they "decided that a good way to participate was to help ensure that elections are free and fair" and that they "assisted anyone who was interested in this project in becoming a poll watcher." Their counterclaim sought declaratory relief challenging the constitutionality of Election Code provisions. Appellants claimed that the Election Code provisions at issue violated the First, Fourth, Eighth, and/or Fourteenth Amendments to the United States Constitution. *See* U.S. Const. amends. I, IV, VIII, XIV, § 1.

The parties entered into a rule 11 agreement to sever appellants' counterclaim challenging the facial constitutionality of the Election Code provisions into a separate cause number by agreed order and to abate the remaining claims until the new cause was resolved. Per that agreement, the trial court severed KSP's counterclaim into this cause and realigned the parties. The parties then filed cross-motions for summary judgment. *See* Tex. R. Civ. P. 166a.

In their motion for summary judgment, TDP urged that the applicable provisions of the Election Code were facially constitutional. *See* Tex. Elec. Code §§ 251.001, 253.031, 253.094, 253.104, 253.131, 253.132, 273.081. Among the grounds asserted to support summary judgment, TDP argued that sections 251.001, 253.094, and 253.131 had already been determined constitutional. To support this ground, TDP cited the opinions in *Ex parte Ellis*, 309 S.W.3d 71 (Tex. Crim. App.

3

2010), *Osterberg v. Peca*, 12 S.W.3d 31 (Tex. 2000), and *Castillo v. State*, 59 S.W.3d 357 (Tex. App.—Dallas 2001, pet. ref'd).

Appellants countered in their motion for summary judgment that the applicable Election Code provisions were facially unconstitutional. Among the grounds asserted to support summary judgment in their favor, appellants urged that: (i) the sections creating private rights of action for Election Code violations, *see* Tex. Elec. Code §§ 253.131, 253.132, 273.081, violated the First, Fourth, and Fourteenth Amendments; (ii) the sections prohibiting corporate contributions and expenditures, *see id.* §§ 253.091, .094, were unconstitutional under *Citizens United v. Federal Election Commission*, 558 U.S. 310 (2010), and violated the First and Fourteenth Amendments; (iii) the definitions of contributions and expenditures, *see* Tex. Elec. Code § 251.001(2)–(10), were unconstitutionally overbroad and vague; (iv) the definitions of political committees, *see id.* § 251.001(12), (14), were unconstitutionally overbroad and vague and violated the First Amendment; (v) the direct expenditure sections, *see id.* former §§ 253.062, .097, violated the First Amendment; (vi) the sections with "thirty and sixty day blackout periods," *see id.* §§ 253.031(c), .037(a), violated the First Amendment; and (vii) the sections providing criminal penalties, *see id.* §§ 253.003, .094, .101, .102, .103, .104, violated the Eighth Amendment.

Appellants did not offer summary judgment evidence to support their motion. TDP's evidence included affidavits, documents, and videos concerning KSP's recruitment and training of poll watchers.[3] The parties also stipulated to the following facts:

---

[3] TDP presented affidavits from the Chair of the Harris County Democratic Party, the Deputy Executive Director for the Texas Democratic Party, and Bennett. They testified regarding KSP's "assistance" and "support" of the TRP during the 2010 general election cycle and KSP's poll watcher

4

a.      King Street Patriots, during and in advance of the 2010 General Election for State and County Officers, conducted, at its own expense, a training and recruitment program for poll watchers. Many of these KSP located and trained poll watchers were subsequently appointed to serve under Texas Election Code §§ 32.002–.003 by the Harris County Republican Party Chairman and/or Republican Nominees with regard to the 2010 General Election for State and County Officers.

b.      Plaintiffs, the Texas Democratic Party, Boyd Richie, John Warren, and Ann Bennett, using the private right of action found in Tex. Elec. Code §§ 273.081, 253.131, and 253.132, intend to enforce Texas Election Code sections 251.001(2), (3), (4), (5), (6), (7), (8), (9), (10), (12), (14), 253.031(c), 253.037(a)(1) and (b), 253.062, 253.094, 253.097, and 253.104 against Defendants-Counterclaimants, King Street Patriots, Catherine Engelbrecht, Bryan Engelbrecht and Diane Josephs, based on alleged political speech the Defendants-Counterclaimants have engaged in, and intend to continue to engage in, in the future.

The trial court granted summary judgment against appellants and in favor of TDP. The trial court declared that Election Code sections 251.001(2), (3), (5), (6), (7), (8), (10), (12), and (14), 253.031, 253.037, 253.094, 253.104, 253.131, 253.132, and 273.081 and former sections 253.062 and 253.097 were facially constitutional. The trial court also concluded that it did not have jurisdiction to grant declaratory relief with respect to sections 251.001(4) and (9), the officeholder definitions, sections 253.031(c) and 253.037(a), the "blackout" periods, and the criminal penalties contained in

---

program. The Chair of the Harris County Democratic Party testified:

> The poll watchers recruited and trained by KSP for service in Harris County were all appointed by Republican nominees or the Harris County Republican Party. The KSP never offered to provide poll watchers for or on behalf of the Harris County Democratic Party. I attended at least one meeting at the Harris County Attorney General's Office at which the representative of the Harris County Republican Party discussed and acknowledged the coordinated efforts between the KSP and the Harris County Republican Party in connection with training and assigning poll watchers.

sections 253.094(c), 253.003(e), 253.101, 253.102, 253.103, and 253.104. The trial court concluded that it did not have jurisdiction with respect to those provisions because they were not at issue in the case. This appeal followed.

## ANALYSIS

Appellants bring six issues on appeal, primarily tracking the grounds raised in their motion for summary judgment. Appellants challenge the constitutionality of the sections of the Election Code that create a private right of action, the sections that allegedly "ban" corporate contributions and expenditures, the section defining various terms, the sections allegedly creating "blackout" periods, and the sections containing criminal penalties for violations of the Election Code. Appellants contend that the trial court erred by concluding that it did not have jurisdiction with respect to some of these challenged Election Code provisions and that it erred by declaring the remaining Election Code provisions facially constitutional.

### Standards of Review

We review a trial court's summary judgment rulings de novo. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005). To prevail on a traditional motion for summary judgment, the movant must show that there are no genuine issues of material fact and that it is entitled to judgment as a matter of law. Tex. R. Civ. P. 166a(c); *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215–16 (Tex. 2003). When, as is the case here, both parties move for summary judgment and the trial court grants one motion and denies the other, we review the summary-judgment evidence presented by both sides, determine all questions presented, and render

the judgment the trial court should have rendered. *Texas Workers' Comp. Comm'n v. Patient Advocates of Tex.*, 136 S.W.3d 643, 648 (Tex. 2004).

We also review matters of statutory construction de novo. *See Texas Mun. Power Agency v. Public Util. Comm'n of Tex.*, 253 S.W.3d 184, 192 (Tex. 2007). Of primary concern in construing a statute is the express statutory language. *See Galbraith Eng'g Consultants, Inc. v. Pochucha*, 290 S.W.3d 863, 867 (Tex. 2009); *Osterberg*, 12 S.W.3d at 38. "We thus construe the text according to its plain and common meaning unless a contrary intention is apparent from the context or unless such a construction leads to absurd results." *Presidio Indep. Sch. Dist. v. Scott*, 309 S.W.3d 927, 930 (Tex. 2010) (citing *City of Rockwall v. Hughes*, 246 S.W.3d 621, 625–26 (Tex. 2008)). We consider the entire act, not isolated portions. *20801, Inc. v. Parker*, 249 S.W.3d 392, 396 (Tex. 2008).

We also interpret statutes, if possible, in a way that makes them constitutional. *See City of Pasadena v. Smith*, 292 S.W.3d 14, 19 (Tex. 2009). "A statute is presumptively constitutional." *Brooks v. Northglen Ass'n*, 141 S.W.3d 158, 170 (Tex. 2004) (citing *Barshop v. Medina Cnty. Underground Water Conservation Dist.*, 925 S.W.2d 618, 625 (Tex. 1996)); *see also* Tex. Gov't Code § 311.021(1).

**Declarations Addressing Constitutionality of Statutes**

Declaratory relief is available to resolve constitutional challenges to statutes. *See* Tex. Civ. Prac. & Rem. Code §§ 37.001–.011 ("UDJA"). The separation of powers article of the Texas Constitution, however, prohibits courts from issuing advisory opinions. Tex. Const. art. II, § 1; *see Brown v. Todd*, 53 S.W.3d 297, 302 (Tex. 2001) (advisory opinion decides "abstract questions of law

without binding the parties"). An advisory opinion addresses a "theoretical dispute," a dispute that does not involve "a real and substantial controversy involving a genuine conflict of tangible interests." *Texas Health Care Info. Council v. Seton Health Plan, Inc.*, 94 S.W.3d 841, 846 (Tex. App.—Austin 2002, pet. denied). Accordingly, the UDJA has been interpreted "to be merely a procedural device for deciding cases already within a court's jurisdiction rather than a legislative enlargement of a court's power, permitting the rendition of advisory opinions." *Texas Ass'n of Bus. v. Texas Air Control Bd.*, 852 S.W.2d 440, 444 (Tex. 1993); *see also Texas Health Care Info. Council*, 94 S.W.3d at 846 ("A declaratory judgment action does not vest a court with the power to pass upon hypothetical or contingent situations, or to determine questions not then essential to the decision of an actual controversy, although such questions may in the future require adjudication."). As such, a party seeking declaratory relief must show that a requested declaration will resolve a live controversy between the parties. *See Texas Health Care Info. Council*, 94 S.W.3d at 846.

The constitutional challenges at issue here are limited to facial challenges. To sustain a facial challenge, a party generally "'must establish that the statute, by its terms, always operates unconstitutionally.'" *City of Corpus Christi v. Public Util. Comm'n of Tex.*, 51 S.W.3d 231, 240–41 (Tex. 2001) (citing *Barshop*, 925 S.W.2d at 627 (citing *Texas Workers' Comp. Comm'n v. Garcia*, 893 S.W.2d 504, 518 (Tex. 1995))); *see Combs v. STP Nuclear Operating Co.*, 239 S.W.3d 264, 272 (Tex. App.—Austin 2007, pet. denied) (comparing facial and as-applied constitutional challenges and noting that "[a] party seeking to invalidate a statute 'on its face' bears a heavy burden of showing that the statute is unconstitutional in all of its applications").

Among their constitutional challenges, appellants claim that the Election Code provisions at issue violate their free speech and associational rights under the First and Fourteenth Amendments. *See* U.S. Const. amends. I, XIV, § 1. In a facial challenge to a statute based on the First Amendment, even if the challenged statute is constitutional in some of its applications, a plaintiff may prevail by establishing "'that the statute lacks any plainly legitimate sweep.'" *Catholic Leadership Coal. of Tex. v. Reisman*, 764 F.3d 409, 426 (5th Cir. 2014) (quoting *United States v. Stevens*, 559 U.S. 460, 472 (2010) (internal quotation marks and citation omitted)). "Plaintiffs may also invalidate a statute as overbroad if they demonstrate that 'a substantial number of [the law's] applications are unconstitutional, judged in relation to the statute's plainly legitimate sweep.'" *Id.* (quoting *Stevens*, 559 U.S. at 473 (internal citations omitted)).

The United States Supreme Court has stated the importance of First Amendment rights in the electoral context on many occasions. In *Citizens United*, the Supreme Court explained:

> Speech is an essential mechanism of democracy, for it is the means to hold officials accountable to the people. . . . The right of citizens to inquire, to hear, to speak, and to use information to reach consensus is a precondition to enlightened self-government and a necessary means to protect it. The First Amendment "'has its fullest and most urgent application' to speech uttered during a campaign for political office." . . . For these reasons, political speech must prevail against laws that would suppress it, whether by design or inadvertence.

558 U.S. at 339–40 (internal citations omitted).

The Supreme Court, however, has applied differing standards in the electoral context depending on whether the statute at issue addresses political expenditures, contributions, or disclosure requirements. For example, when reviewing statutes governing corporate contributions and

9

disclosure requirements, the Supreme Court has articulated the test as whether the statute is closely drawn to match a sufficiently important governmental interest. *See Doe v. Reed*, 561 U.S. 186, 196 (2010) (noting that "exacting scrutiny" review applies when considering First Amendment challenges to disclosure requirements in the electoral context); *Citizens United*, 558 U.S. at 366–67 (noting that disclosure requirements are subject to "'exacting scrutiny,' which requires a 'substantial relation' between the disclosure requirement and a 'sufficiently important' governmental interest" (quoting *Buckley v. Valeo*, 424 U.S. 1, 64, 66 (1976))); *Federal Election Comm'n v. Beaumont*, 539 U.S. 146, 161 (2003) (noting that challenges to limits on corporate contributions pass constitutional muster if "'closely drawn' to match a 'sufficiently important interest'" (citation omitted)).

In contrast, when reviewing statutes governing corporate independent expenditures in the electoral context, the Supreme Court used a strict-scrutiny review. *See Citizens United*, 558 U.S. at 340 ("Laws that burden political speech are 'subject to strict scrutiny.'"). Strict-scrutiny review "requires the Government to prove that the restriction 'furthers a compelling interest and is narrowly tailored to achieve that interest.'" *Id.* (quoting *Federal Election Comm'n v. Wisconsin Right to Life, Inc.*, 551 U.S. 449, 464 (2007)); *Buckley*, 424 U.S. at 39 (noting that restrictions on political expenditures "limit political expression 'at the core of our electoral process and of the First Amendment freedoms'" (quoting *Williams v. Rhodes*, 393 U.S. 23, 32 (1968))); *see also McCutcheon v. Federal Election Comm'n*, 134 S.Ct. 1434, 1444–45 (2014) (plurality op.) (declining to revisit distinction in *Buckley* between contributions and expenditures and corollary distinction in applicable standards of review). Within this framework, we turn to appellants' issues.

**Private Right of Action**

In their first issue, appellants challenge the constitutionality of the sections creating a private right of action for Election Code violations. *See* Tex. Elec. Code §§ 253.131, 253.132, 273.081. Appellants contend that these provisions on their face violate the First Amendment, the Fourth Amendment, and the Due Process Clause of the Fourteenth Amendment. *See* U.S. Const. amends. I, IV, XIV, § 1. They assert that the provisions infringe upon speech and associational rights: that they "lack guidelines regarding what showing is necessary to initiate an investigation," "lack sufficient standards to protect discovery abuse," and have "enormous potential for abuse." They also urge that the injunction section, section 273.081, is an improper prior restraint on speech.

*a)*     *Sections 253.131 and 253.132*

Section 253.131 creates a private right of action for opposing candidates, and section 253.132 creates a private right of action for political committees, to bring actions against a corporation or labor organization to recover statutory damages for violations of the Election Code. *See* Tex. Elec. Code §§ 253.131, .132. Sections 253.131 and 253.132 state:

§ 253.131. Liability to Candidates

(a)     A person who knowingly makes or accepts a campaign contribution or makes a campaign expenditure in violation of this chapter is liable for damages as provided by this section.

(b)     If the contribution or expenditure is in support of a candidate, each opposing candidate whose name appears on the ballot is entitled to recover damages under this section.

(c)     If the contribution or expenditure is in opposition to a candidate, the candidate is entitled to recover damages under this section.

11

(d)     In this section, "damages" means:

 (1)     twice the value of the unlawful contribution or expenditure; and

 (2)     reasonable attorney's fees incurred in the suit.

(e)     Reasonable attorney's fees incurred in the suit may be awarded to the defendant if judgment is rendered in the defendant's favor.

§ 253.132. Liability to Political Committees

(a)     A corporation or labor organization that knowingly makes a campaign contribution to a political committee or a direct campaign expenditure in violation of Subchapter D is liable for damages as provided by this section to each political committee of opposing interest in the election in connection with which the contribution or expenditure is made.

(b)     In this section, "damages" means:

 (1)     twice the value of the unlawful contribution or expenditure; and

 (2)     reasonable attorney's fees incurred in the suit.

(c)     Reasonable attorney's fees incurred in the suit may be awarded to the defendant if judgment is rendered in the defendant's favor.

*Id.* §§ 253.131, .132. Appellants focus on the lack of standards within the private-right-of-action sections regarding what showing is necessary to initiate investigation or discovery and what is discoverable, arguing that discoverable evidence must satisfy a heightened showing of relevance in the context of the First Amendment.

The trial court upheld the constitutionality of these sections based in part on the Texas Supreme Court's opinion in *Osterberg*. In that opinion, the Texas Supreme Court faced a constitutional challenge to section 253.131 based on the First Amendment's free speech and associational rights. 12 S.W.3d at 48. The supreme court held that the private right of action created

12

44

in section 253.131 was constitutional, reasoning that private enforcement advanced a "sufficient state interest":

> Section 253.131 is designed to "deter violators and encourage enforcement by candidates and others directly participating in the process, rather than placing the entire enforcement burden on the government." . . . Because state resources for policing election laws are necessarily limited, in many cases section 253.131 is likely to provide the only viable means of enforcing reporting requirements. Preventing evasion of these important campaign finance provisions is a legitimate and substantial state interest. . . . Furthermore, that the person enforcing the law and receiving damages can be a private party rather than the State does not mean that section 253.131 adds additional restrictions on First Amendment rights.

*Id.* at 49 (internal citations omitted). Although the court did not address section 253.132, the rationale for concluding that section 253.131 does not violate First Amendment rights applies equally to section 253.132.

Appellants urge that *Osterberg* does not control here. They distinguish the issue before this Court from the one addressed in *Osterberg* because, in that case, the challenge concerned *who* could recover damages and only one opposing candidate brought the suit. Appellants argue that the issue here is different because their focus is on the language in sections 253.131 and 253.132 that allows multiple parties to seek damages for the same Election Code violation. For example, they urge that multiple candidates may sue and recover damages when the challenged speech is about issues. However, the dispute here concerns alleged improper contributions by KSP to the TRP and its candidates, not issue advocacy by KSP. Declaratory relief is only available if the declaration will resolve a live controversy that binds the parties, *Texas Ass'n of Bus.*, 852 S.W.2d at 444, therefore, we decline to consider appellants' constitutional challenge based upon speech concerning issues.

13

45

Further, whether the statute is unconstitutional as-applied to a particular circumstance, such as multiple candidates suing to recover damages for the same speech about issues, is not the dispositive question before us, given that appellants' facial challenge requires them to prove the statute is unconstitutional in all circumstances or, in the First Amendment context, "that the statute lacks any plainly legitimate sweep." *See Reisman*, 764 F.3d at 426.

Appellants urge that the private-right-of-action sections do not provide necessary safeguards to avoid chilling the First Amendment fundamental right of privacy in association, "particularly where one must divulge such information to political opponents." In the context of as-applied challenges, courts have found that the constitution provides protection from disclosure of a person's identity in the context of associational rights if there is a "reasonable probability" that the disclosure will subject the person to "threats, harassment, or reprisals from either Government officials or private parties." *Citizens United*, 558 U.S. at 367; *Buckley*, 424 U.S. at 74; *In re Bay Area Citizens Against Lawsuit Abuse*, 982 S.W.2d 371, 376, 380–82 (Tex. 1998) (orig. proceeding). But appellants only bring a facial challenge to the statutes at issue. *See Citizens United*, 558 U.S. at 367 (acknowledging as-applied challenge may be available based upon showing that there was reasonable probability that disclosure would subject persons to threats, harassment, or reprisals). Appellants also did not offer summary judgment evidence that would support a finding that there is a "reasonable probability" that disclosure via discovery would subject them to "threats, harassment, or reprisals." *See id.* As such, precedent does not support appellants' argument that subjecting a person to suit and discovery under the Election Code facially violates First Amendment associational rights.

Appellants' arguments also focus on the lack of standards for discovery and initiating a suit within the private-right-of-action provisions to support their position that the provisions violate the Due Process Clause and the Fourth Amendment. *See* U.S. Const. amends. IV, XIV, § 1. They urge that the private-right-of-action provisions violate the Fourth Amendment because they do not require a showing of probable cause prior to allowing discovery. They contend that discovery initiated by a person acting under color of state law is a Fourth Amendment search and, therefore, that probable cause is required. Otherwise, they urge, the government could circumvent probable cause requirements by awaiting discovery in a civil proceeding. As to the Due Process Clause, appellants urge that the sections fail to provide the necessary "procedural safeguards" to prevent "'unbridled discretion' *via* discovery to seize constitutionally protected documents and communications, even if the private enforcers lose on their claims."

The Due Process guarantees, however, only provide protection against state action. *See Tulsa Prof'l Collection Servs., Inc. v. Pope*, 485 U.S. 478, 485 (1988); *Jackson v. Metropolitan Edison Co.*, 419 U.S. 345, 349 (1974); *Blum v. Yaretsky*, 457 U.S. 991, 1002 (1982) (noting that since 1883, "principle has become firmly embedded in our constitutional law that the action inhibited by the first section of the Fourteenth Amendment is only such action as may fairly be said to be that of the States" and that the Fourteenth Amendment "erects no shield against merely private conduct, however discriminatory or wrong").[4] Similarly, the Fourth Amendment protections generally only

---

[4] We also are not persuaded by the cases cited by appellants to support their position that the private-right-of-action provisions violate the Due Process Clause. Unlike the statutes at issue here, those cases involved laws that delegated legislative power to private citizens. *See, e.g., Eubank v. City of Richmond*, 226 U.S. 137, 141–44 (1912); *General Elec. Co. v. New York Dep't of Labor*, 936 F.2d 1448, 1454–55 (2d Cir. 1991) (collecting similar cases). For example, an ordinance

apply to state action. *Skinner v. Railway Labor Executives' Ass'n*, 489 U.S. 602, 614 (1989). Although the Fourth Amendment provides protection against a search or seizure by a private party if the private party is acting as an instrument or agent of the government, there was no evidence that TDP was acting as an agent or instrument of the government here, *see id.*, and, even if there were such evidence, that would not satisfy appellants' burden to show that the statute is facially unconstitutional. *See City of Corpus Christi*, 51 S.W.3d at 240–41.

In any case, a private suit brought under the Election Code has procedural safeguards in place to protect defendants from unnecessary or overly intrusive discovery. Such suits are subject to the laws that apply to civil suits generally, such as the Texas Rules of Civil Procedure and the Texas Rules of Evidence. The Texas Rules of Civil Procedure provide guidelines for discovery and allow trial courts to limit discovery to protect confidential information. *See* Tex. R. Civ. P. 192.6. The rules, as well as statutes, also allow trial courts to award sanctions for discovery abuse and remedies for frivolous suits. *See, e.g.*, Tex. Civ. Prac. & Rem. Code §§ 10.001–.006; Tex. R. Civ. P. 13, 215. And sections 253.131 and 253.132 allow the recovery of attorney's fees for a successful defendant. *See* Tex. Elec. Code §§ 253.131(e), .132(c).

We conclude that the trial court did not err by granting summary judgment in favor of TDP with respect to sections 253.131 and 253.132 and by declaring those sections facially constitutional.

---

allowing boundaries to be fixed by a vote of two thirds of a particular group of property owners was found to be unconstitutional because it allowed a majority of private citizens to determine the rights of the minority without fixing a standard under which the decision was made. *Eubank*, 226 U.S. at 141–44.

*b)    Section 273.081*

Section 273.081 states that "[a] person who is being harmed or is in danger of being harmed by a violation or threatened violation of this code is entitled to appropriate injunctive relief to prevent the violation from continuing or occurring." *Id.* § 273.081. Appellants argue that section 273.081 is "a prior restraint" on speech. *See Alexander v. United States*, 509 U.S. 544, 550 (1993); *Amalgamated Acme Affiliates, Inc. v. Minton*, 33 S.W.3d 387, 393 (Tex. App.—Austin 2000, no pet.). "A prior restraint is an administrative or judicial order forbidding certain communications when issued in advance of the time that such communications are to occur." *Minton*, 33 S.W.3d at 393. Appellants also argue that the section fails strict-scrutiny review and that it is not narrowly tailored to an important governmental interest. Appellants focus on the language in section 273.081 that allows injunctive relief to a "person," not just a political opponent, based upon "threatened" harm. Appellants argue that no compelling interest justifies enjoining political speech.

The plain language of section 273.081, however, does not support appellants' assertion that the section on its face violates the prohibition on prior restraints. *See Scott*, 309 S.W.3d at 930. The section applies to the entire Election Code, allowing injunctions in many different contexts. *See* Tex. Elec. Code § 273.081; *In re Gamble*, 71 S.W.3d 313, 318 (Tex. 2002) (orig. proceeding) (discussing injunctive relief provided by section 273.081 in context of violation of section 141.032 by party chair); *Cook v. Tom Brown Ministries*, No. 08-11-00367-CV, 2012 Tex. App. LEXIS 1318, at *43–45 (Tex. App.—El Paso Feb. 17, 2012, pet. denied) (mem. op.) (reversing trial court's denial of injunctive relief for Election Code violation and ordering city clerk to decertify and return recall petitions); *Ramirez v. Quintanilla*, Nos. 13-10-00449-CV, 13-10-00450-CV, 13-10-00454-CV,

17

2010 Tex. App. LEXIS 6861, at *43–44 (Tex. App.—Corpus Christi Aug. 20, 2010, pet. denied) (mem. op.) (affirming temporary injunction enjoining special election). The section also limits the scope of injunctive relief to "appropriate injunctive relief." Tex. Elec. Code § 273.081. And an order granting a temporary injunction is subject to interlocutory appeal. *See* Tex. Civ. Prac. & Rem. Code § 51.014(4). Given the scope and limits of the injunctive relief available under section 273.081, we conclude that this section is not facially unconstitutional or a "prior restraint" on speech. *See Minton*, 33 S.W.3d at 393.

We conclude that the trial court did not err by granting summary judgment in favor of TDP with respect to section 273.081 and by declaring the section facially constitutional. We overrule appellants' first issue.

**Corporate Contributions and Expenditures**

In their second issue, appellants argue that sections 253.091 and 253.094 are unconstitutional because they "ban" corporate contributions and expenditures. *See* Tex. Elec. Code §§ 253.091, .094. They argue that the corporate "ban" on contributions and expenditures fails strict-scrutiny review under *Citizens United*. As part of this issue, appellants also argue that the restrictions are content based and violate the equal protection clause and that speech restrictions that differentiate among speakers are subject to strict scrutiny. Content-based restrictions have been held to raise equal protection concerns "because, in the course of regulating speech, such restrictions differentiate between types of speech." *Burson v. Freeman*, 504 U.S. 191, 197 n.3 (1992). "Under either a free speech or equal protection theory, a content based regulation of political speech in a public forum is valid only if it can survive strict scrutiny." *Id.*

18
50

Section 253.091 sets forth the types of entities that are subject to subchapter D, the subchapter addressing corporations and labor organizations. Tex. Elec. Code § 253.091. The section includes non-profit corporations—such as KSP—as entities subject to subchapter D. *See id.* Prior to its amendment in 2011, section 253.094(a) limited corporate political contributions and expenditures to those expressly allowed in the subchapter. *See* Act of June 19, 1987, 1987 Tex. Gen. Laws at 3009. In 2011, section 253.094(a) was amended to delete corporate political expenditures. It now reads:

> A corporation or labor organization may not make a political contribution that is not authorized by this subchapter.

Tex. Elec. Code § 253.094(a). Section 253.094 was amended after the *Citizens United* opinion in which the Supreme Court held that the government may not prohibit corporate independent political expenditures. 558 U.S. at 365.[5]

At this stage of the parties' dispute, TDP's claim as to section 253.094 is not based on alleged political expenditures by KSP, but alleged contributions made by KSP.[6] As to the contribution limitations that section 253.094 places on the entities specified in section 253.091, appellants ask this Court to expand the holding in *Citizens United*. We decline to do so. The

---

[5] We disagree with appellants' contention that the trial court failed to address the expenditure component of former section 253.094. In the final summary judgment, the trial court expressly referenced the 2011 amendment to section 253.094 that removed expenditures.

[6] TDP's counsel confirmed at oral argument that TDP's claim for statutory damages based upon a violation of section 253.094 was limited to alleged political contributions made by KSP. *See* Tex. Elec. Code § 253.094. Their fourth amended original petition conforms with counsel's statements at oral argument.

19

Supreme Court in *Citizens United* continued to distinguish between expenditures and contributions and expressly stated that it was not reconsidering corporate contribution limits. 558 U.S. at 358–60; *see McCutcheon*, 134 S.Ct. at 1444–45 (discussing *Buckley* and reasons for distinguishing between political expenditures and contributions in context of First Amendment). Further, we are guided by the Supreme Court's analysis in *Beaumont* and the Texas Court of Criminal Appeals' analysis in *Ex parte Ellis*. In *Beaumont*, the Supreme Court rejected an as-applied challenge to corporate contribution limitations. 539 U.S. at 163. Upholding the constitutionality of the corporate contribution regulation at issue, the Supreme Court found that the regulation served compelling governmental interests, preventing "war chest" corruption and serving to prevent individuals from using the corporate form to circumvent contribution limits. *Id.* at 154–55. The Texas Court of Criminal Appeals in *Ex parte Ellis* concluded that the opinion in *Citizens United* did not have any effect on its jurisprudence relating to corporate contributions and upheld section 253.094 as facially constitutional, guided in part by the *Beaumont* opinion. 309 S.W.3d at 83–85, 92.

Appellants also urge that section 253.094 violates the equal protection clause because it bans contributions by corporations but not labor unions. But, as previously stated, section 253.094 also applies to labor organizations. *See* Tex. Elec. Code § 253.094. Guided by the directives in *Beaumont* and *Ex parte Ellis*, we conclude that the trial court did not err by granting summary judgment in favor of TDP with respect to appellants' constitutional challenges to the corporate contribution limitations and by declaring section 253.094 facially constitutional. We overrule appellants' second issue.

**Contribution and Expenditure Definitions**

In their third issue, appellants argue that the definitions of contribution, campaign contribution, officeholder contribution, political contribution, expenditure, campaign expenditure, direct campaign expenditure, officeholder expenditure, and political expenditure are unconstitutionally vague. *See* Tex. Elec. Code § 251.001(2)–(10).

A law is unconstitutionally vague if it fails to give those affected by it a reasonable opportunity to know what is required or when it is so indefinite that any enforcement is necessarily arbitrary or discriminatory. *City of Chicago v. Morales*, 527 U.S. 41, 52 (1999); *Commission for Lawyer Discipline v. Benton*, 980 S.W.2d 425, 437–38 (Tex. 1998). In the context of statutes that impose criminal penalties and impact First Amendment interests, "[c]lose examination of the specificity of [a] statutory limitation is required." *Buckley*, 424 U.S. at 40–41. "In such circumstances, vague laws may not only 'trap the innocent by not providing fair warning' or foster 'arbitrary and discriminatory application' but also operate to inhibit protected expression by inducing 'citizens to steer far wider of the unlawful zone . . . than if the boundaries of the forbidden areas were clearly marked.'" *Id.* at 41 n.48 (internal citation omitted). "Because First Amendment freedoms need breathing space to survive, government may regulate in the area only with narrow specificity." *National Ass'n for Advancement of Colored People v. Button*, 371 U.S. 415, 433 (1963).

Appellants focus on the words "direct" and "indirect" and the phrase "any other thing of value" in the definitions of contribution and the phrase "any other thing of value" in the definitions of expenditure to support their position that the general definitions are unconstitutionally vague. *See* Tex. Elec. Code § 251.001(2), (6). For purposes of this appeal, the Election Code defines a

21

contribution to mean "a direct or indirect transfer of money, goods, services, or any other thing of value" and an expenditure to mean "a payment of money or any other thing of value." *Id.* § 251.001(2), (6). Appellants also raise additional concerns with the definitions of the different types of contributions and expenditures. Focusing on the phrases "contribution," "political committee," "the intent," and "in connection with . . . a measure," they contend that the definition of campaign contribution is circular and vague. Section 251.001(3) defines a "campaign contribution" to mean "a contribution to a candidate or political committee that is offered or given with the intent that it be used in connection with a campaign for elective office or on a measure." *See id.* § 251.001(3). Appellants argue that "in connection with a campaign . . . on a measure" cannot be construed to exclude "general issue advocacy" and, therefore, is vague and unconstitutional.

Appellants make similar arguments as to the definition of an officeholder contribution. Section 251.001(4) defines an "officeholder contribution" to mean a "contribution to an officeholder or political committee that is offered or given with the intent that it be used to defray expenses that: (A) are incurred by the officeholder in performing a duty or engaging in an activity in connection with the office; and (B) are not reimbursable with public money." *See id.* § 251.001(4). Appellants make the same argument and address intent, as well as contending that the words "defray" and "in connection with" are vague. Finally, because a "political contribution" is defined as a "campaign contribution" or an "officeholder contribution," appellants urge that this definition is also vague for the reasons stated above. *See id.* § 251.001(5).

Turning to the definitions of different types of expenditures, the Election Code defines a "campaign expenditure" to mean "an expenditure made by any person in connection with a

campaign for an elective office or on a measure. Whether an expenditure is made before, during, or after an election does not affect its status as a campaign expenditure." *Id.* § 251.001(7). "A 'direct campaign expenditure' means a campaign expenditure that does not constitute a campaign contribution by the person making the expenditure." *Id.* § 251.001(8). Appellants contend that the words "in connection with" are vague when considering their impact on political speech about a measure, especially because the definition includes political speech after an election. Appellants further urge that the definitions include "general issue advocacy" and, therefore, are unconstitutional. Appellants make the same vagueness argument as to the definition of "officeholder expenditure" as they make as to the definition of "officeholder contribution." *See id.* § 251.001(9). The definition of officeholder expenditure also includes the word "defray" and the phrase "in connection with." Finally, appellants urge that the definition of political expenditure is vague because it uses the terms "campaign expenditure" and "officeholder expenditure." *See id.* § 251.001(10).

As an initial matter, the trial court concluded that it did not have jurisdiction to consider the challenged officeholder definitions. *See id.* § 251.001(4), (9). We agree. Because the officeholder definitions were not at issue between these parties, any declaratory relief as to their constitutionality would be advisory. *See Todd*, 53 S.W.3d at 302 (noting that courts do not have jurisdiction to render advisory opinions). For the same reason, we decline to address appellants' arguments addressing the word "measure" in the various definitions. *See id.* The parties' dispute concerns KSP's activities in connection with campaigns for elective office, not their activities in connection with a measure. *See id.*

23

Appellants' remaining arguments challenging the definitions are controlled by the analysis and reasoning in *Ex parte Ellis*. In the context of alleged improper corporate contributions and a criminal prosecution, the Texas Court of Criminal Appeals considered vagueness and overbreadth challenges to the contribution definitions and found the definitions to be facially constitutional. *See* 309 S.W.3d at 82–92. The *Ellis* court found that the definitions were "sufficiently clear to afford a person of ordinary intelligence a reasonable opportunity to know what [was] prohibited" and that the definitions provided appropriate guidelines for enforcement. *Id.* Although the *Ellis* court did not address the expenditure definitions, the same rationale for concluding that the contribution definitions are facially constitutional applies to the expenditure definitions. Following the *Ellis* court's analysis, we conclude that appellants failed to establish that the definitions at issue are facially unconstitutional and that the trial court did not err in its summary judgment rulings as to these definitions. We overrule appellants' third issue.[7]

---

[7] On rehearing, appellants focus on the overbreadth doctrine. To the extent appellants challenge the definitions based upon this doctrine, we also reject that challenge. "An overbroad statute 'sweeps within its scope a wide range of both protected and non-protected expressive activity.'" *Commission for Lawyer Discipline v. Benton*, 980 S.W.2d 425, 435 (Tex. 1998) (citation omitted). "To vindicate First Amendment interests and prevent a chilling effect on the exercise of First Amendment freedoms, the overbreadth doctrine allows a statute to be invalidated on its face even if it has legitimate application, and even if the parties before the court have suffered no constitutional violation." *Ex parte Ellis*, 309 S.W.3d 71, 90–91 (Tex. Crim. App. 2010) (citing *Broadrick v. Oklahoma*, 413 U.S. 601, 612 (1973)). "The overbreadth doctrine is 'strong medicine' that should be employed 'sparingly' and 'only as a last resort.'" *Id.* (quoting *Broadrick*, 413 U.S. at 613). "'[T]he overbreadth of a statute must not only be real, but substantial as well, judged in relation to the statute's plainly legitimate sweep.'" *Id.* (quoting *Broadrick*, 413 U.S. at 615). "Only if the statute 'reaches a substantial amount of constitutionally protected conduct' may it be struck down for overbreadth." *Benton*, 980 S.W.2d at 436 (quoting *City of Houston v. Hill*, 482 U.S. 451, 458 (1987)). On this record, we decline to strike down the challenged definitions as facially unconstitutional based on the overbreadth doctrine. *See id.*; *see also Clements v. Fashing*, 457 U.S. 957, 972 n.6 (1982) (overbreadth exception to traditional requirement of standing may not

**Political Committee Definitions**

In their fourth issue, appellants contend that the definitions of political committee, specific-purpose committee, general-purpose committee, and the now-repealed direct expenditure sections are facially unconstitutional because they violate the First Amendment and are unconstitutionally vague. *See* Tex. Elec. Code §§ 251.001(12), (13), (14), 253.062, 253.097; Act of June 19, 1987, 1987 Tex. Gen. Laws at 3009.

a)     *Political Committee Definitions*

The Election Code defines a political committee to mean "a group of persons that has as a principal purpose accepting political contributions or making political expenditures." Tex. Elec. Code § 251.001(12).  A specific-purpose political committee supports or opposes identified candidates or measures, *id.* § 251.001(13), and a general-purpose political committee "has among its principal purposes . . . supporting or opposing" two or more unidentified candidates or one or more unidentified measures or "assisting two or more officeholders who are unidentified." *Id.* § 251.001(14). Appellants focus on the phrases "supporting or opposing" and "assisting two or more officeholders" and the inclusion of "unidentified" measures, candidates, and officeholders and "unknown" offices in the general-purpose committee definition. *See id.*

Appellants argue that strict scrutiny applies, but that, even if exacting scrutiny applies, the statutes are facially unconstitutional.  Appellants focus on the analysis by the Supreme Court in *Citizens United* and *Buckley* concerning regulation of political committees.  The Supreme Court in

apply where First Amendment rights may be litigated on a case by case basis).

*Citizens United* observed that political committee status is "burdensome," "onerous," "expensive to administer and subject to extensive regulation." *See* 558 U.S. at 337. In *Buckley*, the Supreme Court construed the federal definition of "political committee" to encompass only organizations "under the control of a candidate[s]" or organizations with the "major purpose" to nominate or elect candidates. 424 U.S. at 79; *see Federal Election Comm'n v. Massachusetts Citizens for Life, Inc.*, 479 U.S. 238, 253 n.6 (1986).

Appellants argue that because the definitions of political committee in the Election Code do not have a "major purpose" or "under the control of a candidate" test that they are facially unconstitutional. Appellants urge that allowing an organization to speak only if it becomes a political committee equates with banning the organization's speech when the organization decides that the speech is "simply not worth it." *See Massachusetts Citizens for Life, Inc.*, 479 U.S. at 255. They also urge that the political committee definitions are unconstitutional because they have a zero-dollar threshold and that they are unconstitutionally vague because "[a] speaker cannot know when it has this 'principal purpose.'" They urge that the definitions do not provide fair warning and subject speakers to "arbitrary and discriminatory application," thereby chilling speech. *See Buckley*, 424 U.S. at 41 n.48.

Mindful that appellants' challenge to the definitions is a facial challenge, we cannot conclude that these definitions violate the First Amendment, that they are unconstitutionally vague, or that they lack any plainly legitimate sweep. *See Morales*, 527 U.S. at 52; *Reisman*, 764 F.3d at 426; *compare Massachusetts Citizens for Life, Inc.*, 479 U.S. at 263–65 (holding that federal statute prohibiting corporate expenditures "as applied" to newsletter by nonprofit, nonstock corporation

formed to promote "pro life" causes was unconstitutional as a violation of First Amendment). The plain language of section 251.001(12) limits "political committee" status to groups with "a principal purpose of accepting political contributions or making political expenditures." The Election Code does not define the words "principal purpose" so we apply their common meaning. "Purpose" means "[t]he object toward which one strives or for which something exists; goal; aim." *American Heritage Dictionary of the English Language* 1062 (1973). "Principal" means "[f]irst, highest, or foremost in importance, rank, worth, or degree; chief." *Id.* at 1041. Applying the phrase's common meaning limits the reach of the definition, and the definition also expressly encompasses the definitions of political contributions and expenditures, further defining and narrowing the classification. *See* Tex. Elec. Code § 251.001(5), (10). The definitions of specific-purpose and general-purpose also distinguish between and narrow the different types of political committees on the basis of whether the measure or candidates at issue are identified and known or unidentified and unknown.

Viewing the definitions as a whole and in context with each other, they are "sufficiently clear to afford a person of ordinary intelligence a reasonable opportunity to know what [was] prohibited" and provide appropriate guidelines for enforcement. *See Ex parte Ellis*, 309 S.W.3d at 82–92; *see also Buckley*, 424 U.S. at 41 n.48; *Parker*, 249 S.W.3d at 396. We therefore conclude that the challenged definitions are not unconstitutionally vague or facially unconstitutional under the First Amendment.

### b) Former Sections Addressing Direct Expenditures

As part of their fourth issue, appellants argue that the direct expenditure requirements contained in former sections 253.062 and 253.097 are unconstitutional because they force political

27

committee burdens on individuals. *See* Act of June 19, 1987, 1987 Tex. Gen. Laws at 3009. Former section 253.062 required an individual to comply with reporting requirements when the individual made a direct campaign expenditure exceeding $100, and former section 253.097 required a corporation or labor organization to comply with former section 253.062 as an individual when the corporation or labor organization made direct expenditures in connection with an election on a measure. *See id.* As previously stated above, the parties' dispute concerns KSP's activities in connection with campaigns for elective office, not its activities in connection with a measure, and TDP's claim concerns alleged contributions by KSP, not expenditures. *See id.* We therefore decline to address appellants' arguments addressing these two sections. *See Todd*, 53 S.W.3d at 302. We overrule appellants' fourth issue.

**30 and 60 day periods**

In their fifth issue, appellants argue that the 30 and 60 day "blackout" periods in sections 253.031 and 253.037 are unconstitutional. *See* Tex. Elec. Code §§ 253.031(c), .037(a). Section 253.031(c) prohibits a political committee from making a campaign contribution or expenditure supporting or opposing specified candidates unless its campaign treasurer appointment has been on file for at least 30 days. *Id.* § 253.031(c). Section 253.037(a) prohibits a general-purpose committee from making a political contribution or expenditure unless its campaign treasurer appointment has been on file for at least 60 days and it has accepted political contributions from at least 10 persons. *Id.* § 253.037(a). Appellants argue that the State does not have an interest in prohibiting speech for a period of time after a group is formed or in prohibiting expenditures and contributions by groups of fewer than 10 people. They contend that the 10-person minimum is

unconstitutional because the government has no interest in ensuring that political speech has a base of support and violates the right of association of any group of persons smaller than 10 persons.

The trial court concluded that it did not have jurisdiction to grant declaratory relief with respect to these provisions because they were not at issue in this case and, therefore, any relief would be advisory. *See Todd*, 53 S.W.3d at 305. Appellants argue that the trial court's conclusion that it did not have jurisdiction was in error because appellants must abide by the deadlines in these provisions to engage in political speech. The parties also stipulated that TDP "intended to enforce" sections 253.031(c) and 253.037(a) against appellants. TDP's petition, however, does not raise section 253.037, and limits the alleged violation of section 253.031 to the failure to appoint a campaign treasurer at all. We therefore agree with the trial court that it did not have jurisdiction to consider appellants' constitutional challenges to these provisions. On this basis, we overrule appellants' fifth issue.

**Criminal Penalties**

In their sixth issue, appellants argue that the criminal penalties in the Election Code violate the Eighth Amendment. *See* Tex. Elec. Code §§ 253.003(e), 253.094(c), 253.095, 253.101(b), 253.102(c), 253.103(c), 253.104(c). The specified offenses under the Election Code are third-degree felonies and subject to punishment by imprisonment "not more than 10 years or less then 2 years." Tex. Penal Code § 12.34. In addition to imprisonment, a corporate officer "may be punished by a fine not to exceed $10,000." *Id.* The Eighth Amendment states that "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. Const. amend. VIII.

29

The trial court did not address appellants' constitutional challenges to the criminal penalties in the Election Code because it concluded that it did not have jurisdiction to do so. In its order, the trial court reasoned that the State is not a party and that TDP was not entitled to seek criminal penalties and, therefore, that any ruling would be an improper advisory opinion. *See Todd*, 53 S.W.3d at 305. We agree and, on this basis, overrule appellants' sixth issue.

## CONCLUSION

Having overruled appellants' issues, we affirm the trial court's final summary judgment.

_____

Melissa Goodwin, Justice

Before Chief Justice Jones, Justices Rose and Goodwin

Affirmed on Motion for Rehearing

Filed: December 8, 2014

# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## JUDGMENT RENDERED DECEMBER 8, 2014

### NO. 03-12-00255-CV

**King Street Patriots, Catherine Engelbrecht, Bryan Engelbrecht and Diane Josephs,**
**Appellants**

**v.**

**Texas Democratic Party; Gilberto Hinojosa, Successor to Boyd Richie, in His Capacity as Chairman of the Texas Democratic Party; John Warren, in His Capacity as Democratic Nominee for Dallas County Clerk; and Ann Bennett, in her Capacity as the Democratic Nominee for Harris County Clerk, 55th Judicial District, Appellees**

---

**APPEAL FROM THE 261ST DISTRICT COURT OF TRAVIS COUNTY**
**BEFORE CHIEF JUSTICE JONES, JUSTICES ROSE AND GOODWIN**
**AFFIRMED ON MOTION FOR REHEARING -- OPINION BY JUSTICE GOODWIN**

---

This is an appeal from the judgment signed by the trial court on March 27, 2012. Having reviewed the record and the parties' arguments, the Court holds that there was no reversible error in the trial court's judgment. We therefore order that the motion for rehearing filed by appellants is overruled; that the opinion and judgment dated October 8, 2014, are withdrawn; and that the Court affirms the trial court's judgment. The appellants shall pay all costs relating to this appeal, both in this Court and in the court below.